UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| PHARMA CHEMIE INC.,<br><br>Plaintiff,<br><br>vs.<br><br>FOODSCIENCE CORPORATION, VETRI-SCIENCE LABORATORIES OF VERMONT,DOM ORLANDI, JR., and CLAUDIA ORLANDI<br><br>Defendants. | Case No.: 4:09-CV-00513<br><br><br><br>SUPPLEMENTAL STATUS REPORT BY PHARMA CHEMIE REGARDING SETTLEMENT & DISCOVERY |

Pharma Chemie Inc., Plaintiff, hereby submits the following statement regarding settlement and discovery as a result of the submission by Defendants and in partial response thereto:

<u>Reason for Filing Supplemental Status Report</u>

1.  Plaintiff is of the position that the Status Report filed with the Court on December 6 is all that was required or of interest to the Court, and informed the Defendants of this fact by email (Attachment A).  On the afternoon of December 6, Defendants advised that they would insist upon filing a position statement, thus precipitating this filing by Plaintiff.

2.  Defendants take the position that Plaintiff has been unreasonable in its position regarding the status of settlement, and that the efforts of Plaintiff to enforce the patent-at-issue, United States Patent No. 7,025,965 ('965 patent), are not justified in light of the alleged damage amounts that may be recovered as damages.  In essence, Defendants claim that further discovery, including the discovery directed at the third-party manufacturer, is unwarranted since Defendants are willing to settle, and that Plaintiff is being unreasonable in its efforts to obtain this discovery.

3.  Defendants' position is erroneous in several respects.   First, Defendants view of settlement does not comport with reality, nor with positions previously adopted by Defendants.   Second, Defendants adopt legal positions unsupported by the law as to what information may be "relevant" in this litigation.   Third, Plaintiff has consistently stated, and acted, in a manner whereby the status of the third-party manufacturer was important in the determination of issues relevant to settlement, and discovery.

### Status of Settlement

4.  Defendants have taken the position that this case was settled or near settlement some weeks ago or, in the alternative, is capable of immediate settlement by Plaintiff merely providing a draft of the desired injunction and other demands.   This position is disingenuous.

5.  Specifically, at the time that settlement discussions ended and Plaintiff began to pursue discovery, the following represents the status of the proceedings:

    a.  Early in the litigation, Plaintiff requested the identity of the third-party manufacturer.   Plaintiff deemed that the manufacturer was a potentially important component in terms of proof and in terms of the potential settlement of the claims and scope of the injunctive relief that would be sought.   Defendants refused to divulge the name, and continued in this refusal for a substantial period of time, including as Defendants answered interrogatories.

    b.  Defendants adopted the position that the language of the preamble of Claim 1 of the '965 patent constituted a limitation on the scope of the claims coverage. Plaintiff disagreed based upon cited legal authority.   A Markman hearing would be necessary to resolve this issue.

    c.   Defendants adopted the position that scope of claims coverage for the '965 patent was further limited to precise arithmetic perimeters, and that the use of the term "about" as a precursor of the arithmetic range within the claims was limited to concepts of numerical rounding.  Plaintiff disagreed and, further, on August 16, 2010, provided the expert report of Charles F. Barfknecht, Ph.D. (Pharmaceutical Chemistry) which detailed that the molecular transport component of the chemical, phycocyanin, was of variable size (having differing molecular weights) which impacted the amount of the active ingredient, phycocyanobilin, that reached the cellular level within the non-human animals.  In the '965 patent the dosage range was based upon efficacious responsiveness.  Thus, the term "about" allows for dosage levels that are outside of the precise arithmetic perimeters that Defendants have improperly attempted to impose upon the '965 patent.

6.  Subsequently, Defendants divulged the identity of the third-party manufacturer. Plaintiff inquired if there was objection to adding the entity as a party to this litigation. There was objection.

7.  This case involves allegations of willful infringement and exceptionality under 35 USC §285 which provides for the award of attorney's fees to the prevailing party.  In the conference call of December 6, Defendants stated position was that it was "Patent Law 101" that an exceptional case finding could only be based upon vexatiousness or litigation misconduct, and that a finding of willful infringement would not form the basis for a finding of an exceptional case.  Interestingly, the Federal Circuit disagrees with Defendants. *Beckman Instruments, Inc. v. LKB Produkter AB, et. al.*, 892 F.2d 1547, 1551 (Fed. Cir. 1989)("Among the types of conduct which can form a basis for finding a

case exceptional are **willful infringement**, inequitable conduct before the P.T.O., misconduct during litigation, vexatious or unjustified litigation, and frivolous suit.")(emphasis added); *Hoffman-La Roche Inc. and Syntex (U.S.A.) Inc. v. Invamed Incorporated*, 213 F.3d 1359, 1365 (Fed. Cir. 2000).

### Discovery – Entry of Protective Order

8. The history of the proposed Protective Order shows that disagreements have slowed the pace of this case, but that Plaintiff has continued in its attempts to work with Defendants to keep matters moving forward.

9. Initially, Plaintiff provided Defendants with a proposed Protective Order on September 25.

10. On September 30, Defendants indicated that they had comments and requested a Word version of the proposed Protective Order for purpose of providing these.

11. No redline proposed edits were ever received from Defendants.  Instead, thereafter Defendants rejected the proposed Protective Order insisting upon a two-tiered scheme.

12. On October 19, in correspondence to Defendants, Plaintiff noted the failure of Defendants to provide a redlined version of the Protective Order; requested information related to the two-tiered scheme as demanded by Defendants; provided Defendants with a Motion for Entry of Protective Order – Contested by which Plaintiff may submit its proposed Protective Order to the Court for judicial review and consideration; and offered an agreement that the documents and information sought from the third-party manufacturer would be held as attorney's eyes only until the terms of the Protective Order could be resolved either by agreement or via judicial resolution.

13. On October 25, Defendants advised that they would accept nothing other than a two-tiered Protective Order.  Rather than file the contested motion previously prepared,

Plaintiff studied the Protective Order as supplied by Defendants and on November 12 agreed to its format in principle "as a matter of expediency".[1]

14. On November 16, Defendants provided Word format files for the proposed Protective Order with Plaintiff providing in redline proposed modifications on November 20.  In seeking to file the Motion for Entry of Protective Order on November 23, Plaintiff was advised that counsel for Defendants was on vacation, and the Protective Order would have to wait until the following week.

15. On November 29 Defendants approved the proposed Protective Order and Motion which were filed with the Court on December 1.

### Discovery – Responses by Defendants

16. Defendants indicate or otherwise imply that they have been diligent and reasonable in their dealing with the discovery requests submitted by Plaintiff.  Plaintiff does not agree.

17. On September 18, Plaintiff sent detailed correspondence setting forth concerns that existed as to responses by Defendants to discovery inquiries (Attachment B).

18. Five weeks later, Defendants responded to these issues by correspondence dated October 25 (Attachment C).  Of note, in responding to the concerns of Plaintiff as to the limitations that Defendants had unilaterally imposed on what information they believed was relevant or would otherwise be provided, Defendants attempt to further severely

---

[1] Of note, wearing his other hat as counsel for the third-party manufacturer, Attorney Fawley stated in his correspondence of October 25:  "Finally, we understand that Pharma Chemie is attempting to reach agreement on a form of Protective Order with the Defendants.  Please be advised that Press Tech will not be able to produce sensitive and confidential proprietary business information to Pharma Chemie without an appropriate Protective Order in place."  Therefore, Plaintiff engaged in the efforts as detailed herein so as to move toward resolution and entry of the Protective Order – an action that Plaintiff understood was a condition precedent to advancing to resolution of the issue of obtaining discovery from the manufacturer.

limit and condition the provision of this information and the production of responsive documents.

19. Specifically, Defendants stated that they would provide this information only if Plaintiff agreed that it was <u>precluded</u> from filing any motion to compel or other discovery motion based upon a failure of Defendants' responses, inadequacies of the documents that Defendants' unilaterally determined to provide to Plaintiff, or Defendants' waiver of objections due to the untimely nature of the initial discovery responses by Defendants. This limitation is found in the first paragraph of Attachment C:

> **Upon confirmation that these accommodations will preclude any motion practice on your discovery requests and upon entry of an acceptable protective order,** FoodScience stands prepared to provide a formal supplementation of its previous responses in accordance with the contents of this letter. (emphasis added)

20. Such attempts at gaining concessions and limitations regarding information to which Plaintiff is entitled under the Federal Rules of Civil Procedure are improper.

21. Plaintiff would be on a fool's errand if it were to agree in advance to any attempt at imposing such limitations or conditions without even so much as a prior opportunity to review the responses and/or documents that Defendants determined would be produced.

22. A further review of the correspondence (Attachment C) shows the continuous attempts of Defendants to place improper restraints upon the discovery process, examples of which include, but are limited to the following:

    a. Defendants advised for the first time that they distribute a total of five (5) products for use by non-humans which containing phycocyanin, the key

ingredient in the patent-at-issue. Two (2) of these five (5) products constitute the accused products. Defendants state that as for the other three (3) of these phycocyanin containing products, Defendants are willing to provide the name, SKU number and packaging related to said products, but refuse to provide any further information regarding said products which may be implicated under the patent-at-issue.

b. Defendants advise that they are unwilling to provide any specific information regarding the third-party manufacturer except for a "general description of the role played by its manufacturer in the development of the accused products..."[2]

c. Defendants are prepared to provide formulaic information regarding the accused products limited to the "active-ingredient portions of the products (those that contain phycocyanin **and/or are implicated in the joint support/mobility claims)"[3]**, for but are unwilling to provide any information related to the other aspects of the accused products or the equipment utilized to manufacturer the accused product.

d. Defendants claim that there are <u>no</u> non-privileged documents responsive to Requests No. 7, 8, 9, 12, 16, 17, 18, 19, and 23. From the correspondence it cannot be ascertained if these documents came into existence after the litigation was begun or prior thereto. If prior thereto, then there has been no privilege log provided to Plaintiff related to these documents.

---

[2] It would appear that this position of Defendant/third-party manufacturer may be subject to change. In a lengthy conference telephone call of December 6, various subjects matter of discovery related to the third-party manufacturer were discussed. Defendants' counsel advised that they would review these subjects with their client and advise what, if any, were deemed to be acceptable subjects of discovery.
[3] This bolded portion represents Defendant's continuing attempts to import language from the preamble of the patent claims into the body of the claim so as to impose an improper limitation on the scope of the claims. See, Symantec v. Computer Associates, 522 F.3d 1279, 1288-89 (Fed. Cir. 2008).

## Discovery - Third-Party Manufacturer

23. As indicated above, Plaintiff initially attempted to learn of the identity of the third-party manufacturer by informal means and, thereafter, by way of formal written discovery. For months, Defendants refused to provide this information claiming that while the third-party manufacturer provide identical services for other entities, its identity constituted a "trade secret". Once Plaintiff learned of the identity of the third-party manufacturer, it was able to see that this trade secret was identified in any number of web publications as a manufacturer of ingestible pet products (Attachment D).

24. Finally, after learning the identity of the third-party manufacturer, Plaintiff sought to depose the entity, Press Tech Enterprises, Inc., so as to gain an understanding of the directions and information received from Defendants and the role of the manufacturer in the preparation of the accused product, the packaging, marketing, product R&D, product formulation, efficacy testing, and the like.

25. Objections to these efforts were raised and resulted in the postponement of the document production and deposition of the third-party manufacturer which was set for October 28.

26. As a result of these objections, on October 25, Plaintiff sent the following request to Defendants related to the efforts to obtain production of materials and to take the corporate deposition of the third-party manufacturer:

> On the document production and deposition of Press Tech Enterprises, both of which have been postponed based upon the objections that you have asserted and without prejudice to Pharma Chemie, it would facilitate clarification of the issues if you would identify those subjects matter from the list to which Press Tech Enterprises has objection and the nature of that objection. We may have to ask for the assistance of the Federal Court to help resolve this matter and, if so, we have an obligation to clarify and, if possible, narrow the issues.

Defendants/third party manufacturer *never responded to or rejected this request.*[4]

27. Defendants claim in their supplemental Status Report that Plaintiff has been nonresponsive related to what information it sought from the third-party manufacturer and why. This is simply untrue.

28. Certain of the subjects of interest were recognized in Defendants' email dated November 10. (Exhibit B, Fawley Declaration). Therein, Defendants acknowledge Plaintiff's stated concerns related to and subjects of discussion with the manufacturer:

   - Remaining inventory
   - Packaging
   - Advertising/Promotional activity
   - Preparation of the Instructions for Use
   - Preparation of the dosage amounts as stated on the accused product packaging

   Further, in Interrogatory No. 1 directed to Defendants, Plaintiff made particular inquiry into the involvement of the third-party manufacturer in product formulation, research & development, and prior knowledge/use of phycocyanin containing products. This is acknowledged in Defendant's letter dated October 25 (Attachment C, p. 1-2).

29. In the November 10th email (Exhibit B, Fawley Declaration), Defendants state that any quantity of the accused product that remains in inventory with the third-party manufacturer is of no moment as the '965 patent covers a method, not a product – the same position that Defendants adopted in the lengthy telephone call of December 6. The claims in this litigation are under 35 USC §271 (b) for infringement by inducement and 35 USC §271(c) for contributory infringement. Infringement under either legal theory is predicated upon a product that, when administered to non-human animals, infringes

---

[4] It was at the behest of Plaintiff that a conference call was conducted on these issues on December 6. At the end of the call, it was determined that a second FRCP 45 notice and FRCP 30(B)(6) notice would be prepared and delivered later this week, and that it would be reviewed by Defendants/third-party manufacturer to determine if any of the proffered subjects matter were deemed acceptable.

the patent-at-issue. This attempt to fundamentally and improperly limit the nature and extent of the patent-at-issue lies at the heart of the ongoing disputes that Plaintiff has with Defendants, and with the third-party manufacturer which is also represented by Defendants' counsel.

30. Additionally, wearing his other hat as counsel for the third-party manufacturer, Attorney Fawley stated in an email dated October 25:

> "Finally, we understand that Pharma Chemie is attempting to reach agreement on a form of Protective Order with the Defendants. Please be advised that Press Tech will not be able to produce sensitive and confidential proprietary business information to Pharma Chemie without an appropriate Protective Order in place."

This clearly shows that the entry of the Protective Order was a condition precedent to moving forward with the third-party manufacturer, an area where Plaintiff expended considerable effort in order to finalize and present the proposed Order that was entered by the Court on December 6.

## Defendants' Concept of Relevance

31. As a result of this restricting view of the '965 patent, Defendants have and continue to attempt to impose severe limitations on what is "relevant" for the purposes of discovery.

32. In the correspondence of November 10, 2010 (Exhibit B, Fawley Declaration), the Defendants state the following:

> As to the number of chews manufactured and in inventory, and Glenn's statements during the conference alluding to the chews as the "accused products", we are a bit confused. While we are able to get the information related above if it will resolve the case, we don't understand how the number of chews remaining in inventory or manufactured is relevant to the patent claims in the case. The patent does not cover a "product" but rather a method of using products. Arguably, we could have an entire warehouse full of chews of all sizes containing phycocyanin of all different concentrations and it should not make a bit of difference to the claims or relief at issue in the case. The manufacture and sale of chews containing phycocyanin in any concentration does not in and of itself directly or

indirectly infringe the patent.  Rather, as we understand the patent, it is the method of administering product with phycocyanin by vets and consumers through advertising and packaging that is covered by the claims, and the inducement thereof.  In other words, FoodScience can continue to sell the CX Solution chews it pulled off the market, or any other chews having any concentration of phycocyanin, without infringing the patent so long as it describes administration of the chews in a dose range outside the one covered by the patent.  It is the concentration of phycocyanin in the chew together with the weight of the non-human animal that determines whether direct or indirect infringement occurs.  The product alone is not covered by the claims.

33. First, it is of note that Defendants claim confusion regarding the term, "accused product" when Defendants have used that term throughout this litigation.  *See, e.g.*, Attachment C.

34. Secondly, the Complaint makes clear what Defendants claim not to appreciate - that this litigation is not solely premised upon an inducement theory under 35 USC §271(b).  This litigation further involves claims of contributory infringement under 35 USC §271(c) and willful infringement under 35 USC §284.

35. Simply stated, Defendants assert that they are only required to produce information regarding advertising/communication, and nothing more.  This is again shown by Defendants' letter of October 22, page 3 (Exhibit A, Fawley Declaration), wherein Defendants further attempt to limit the viable subject matter for discovery:

> Whether Press Tech manufactured products for the defendants, how those products were manufactured, the arrangements for production, the volume of production, the formulation of the products or any other of the categories of information that Pharma Chemie seems to seek **has nothing to do with the inducement claim which concerns communications** between the defendants and persons *purchasing or prescribing* the accused product. (Italics in original; bold emphasis added).

36. Under 35 USC §271(c), for many claims of contributory infringement, the product[5] or a separable component or part of the product is the centerpiece to the infringement inquiry – not communications:

> Whoever offers to sell or sells within the United States … **a material or apparatus for use in practicing a patented process** … (emphasis added).

37. The case of *Dawson Chemical Co. v. Rohm and Haas Co.*, 448 U.S. 176, 221-222 (1980) discusses the concepts of contributory infringement under 35 USC §271 relevant to the chemical arts of which the pharmaceutical arts are a component:

> It is perhaps, noteworthy that holders of "new use" patents on chemical processes were among those designated to Congress as intended beneficiaries of the protection against contributory infringement that § 271 was designed to restore. We have been informed that the characteristics of practical chemical research are such that this form of patent protection is particularly important to inventors in that field. The number of chemicals either known to scientists or disclosed by existing research is vast. It grows constantly, as those engaging in "pure" research publish their discoveries. The number of these chemicals that have known uses of commercial or social value, in contrast, is small. Development of new uses for existing chemicals is thus a major component of practical chemical research. It is extraordinarily expensive. It may take years of unsuccessful testing before a chemical having a desired property is identified, and it may take several years of further testing before a proper and safe method for using that chemical is developed. (citations omitted)

38. The case of *i4i Ltd. Partnership v. Microsoft Corp.*, 598 F.3d 831, 849 (Fed.Cir.2010), exemplifies the understanding that a part of a whole may well constitute the material or apparatus under 35 USC §271(c).

> As we explained in Lucent, a particular tool within a larger software package may be the relevant "material or apparatus" when that tool is a separate and distinct feature. In Lucent, the infringement inquiry accordingly focused on

---

[5] *PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, 491 F.3d 1342, 1355-58 (Fed. Cir. 2007)(Case involving a process whereby the umbilical cord blood of a newborn is harvested and reused in a therapeutic manner. Plaintiff's claim of contributory infringement was rejected by the Federal Circuit in affirmance of the District Court because the contributory infringement claim was based upon a service, not the provision of a product.)("The district court construed the contributory infringement statute to require a sale or an offer of sale of a product; the statute is not satisfied, the court ruled, by the provision of a service for compensation." *Id.* at 1356)

the date-picker, even though that tool was included in Microsoft Outlook, a larger software package. Id. Although the software differs, our reasoning in Lucent applies equally here. At trial, i4i showed that some versions of Word 2003 included the custom XML editor, while others did not. Dr. Rhyne opined that this ability to "leave [the editor] out or put it in" various Word products showed that the editor was a separate and distinct feature. Thus, there was sufficient evidence before the jury for it to conclude that the relevant "material or apparatus" was the custom XML editor, not all of Word.

Similar to the *i4i* case, under the '965 patent, the separate and distinct feature of the products at issue is phycocyanin.[6]

39. As indicated in paragraph 7 above, the Defendants have further adopted a strategy to ignore the claim of willful infringement and its potential ramification on the award of attorney fees under the exceptional case criteria and, as a result, attempt to limit and constrain what Plaintiff may obtain in discovery, whether from Defendants or the third-party manufacturer.

40. Contrary to the position adopted by Defendants, relevance under the Federal Rules of Civil Procedure is not tightly limited or constrained. As stated by the United States Supreme Court in the case of *Oppenheimer Fund, Inc. v. Sanders*, 437 US 340, 351 (1978):

> "The key phrase in this definition – "relevant to the subject matter involved in the pending action" – has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case. Consistently with the notice-pleading system established by the Rules, discovery is not limited to issues raised in the pleadings, for discovery itself is designed to help define and clarify the issues. Nor is discovery limited to the merits of a case, for a variety of fact-oriented issues may arise during litigation that are not related to the merits."

---

[6] Of note, in the correspondence of October 25 (Attachment C), Defendants for the first time divulge that they have three (3) additional edible products designed for non-human consumption that contain phycocyanin. Defendants have already taken the position that any information regarding these products is "irrelevant" and will not be provided. Plaintiff does not agree.

41. In essence, it is Plaintiff's view that Defendants have gone to great lengths to prevent Plaintiff from first learning the identity of the third-party manufacturer and, now, attempting to obtain discovery from said entity.  Further, Defendants have adopted a similar strategy of unduly restricting what they will provide in discovery; all the while claiming that Plaintiff has not explained why this information is relevant.  Plaintiff has repeatedly told Defendants of its position that under the claims as asserted in the Complaint, and, further, of its belief that it is entitled to the information that is being sought.  Further, Plaintiff has repeatedly advised Defendants that obtaining information from the third-party manufacturer is a critical element in its discovery and determination as to settlement, and the scope of any settlement related to injunctive relief.

42. In response, Defendants have taken the position that they are willing to pay monetary damages, which they claim are of a low amount, and that all actions by Plaintiff are not worthwhile.  Defendants position ignores the fundamental right under patents to exclude.[7]  Also, apparently in light of the claimed limited monetary damages, Defendants have adopted the position that they have the right to limit the scope of discovery and, further, to provide information in a documentary or affidavit form which Plaintiff should be satisfied to accept without the pursuit of written discovery and depositions.  As was told Defendants in the extended telephonic conference of December 6, the undersigned has never in over thirty-five (35) years of practice had opposing counsel attempt to dictate what discovery was to be obtained and how it was

---

[7] *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1548 (Fed. Cir. 1983)(Under the statute, 35 U.S.C. § 261, a patent is a form of property right, and the right to exclude recognized in a patent is but the essence of the concept of property.)

to be obtained as Defendants are attempting to accomplish in this litigation.  Each of the

actions taken by Plaintiff are contemplated by and consistent with the Federal Rules of

Civil Procedure.

Respectfully submitted,

**PHARMA CHEMIE, INC., PLAINTIFF**

By     /s/
GLENN JOHNSON, AT0003856
WENDY K. MARSH
Nyemaster, Goode, West, Hansell & O'Brien, PC
One GreatAmerica Plaza
625 First Street S.E., Suite 400
Cedar Rapids, Iowa 52401
Office Telephone: 319-286-7000
Direct Telephone: 319-286-7002
Facsimile: 319-286-7050
E-Mail:     gjohnson@nyemaster.com

Copy to:

MICHAEL MALLANEY
Hudson Mallaney Shindler & Anderson PC
5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265
mpmallaney@hudsonlaw.net

R.  BRADFORD FAWLEY
LAWRENCE H. MEIER
Downs Rachlin Martin PLLC
199 Main Street
Courthouse Plaza, P.O. Box 190
Burlington, VT 05402-0190
 LMeier@drm.com
bfawley@drm.com

COUNSEL FOR DEFENDANTS

---

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of this document
was served upon counsel of record for each party to the action
in compliance with FRCP 5 on December 7, 2010 by:

[ x ] Electronically via ECF for ECF registrants
[   ] U.S. Mail to
[   ] Fax _____
[   ] Fed Ex _____
[   ] Hand Delivered _____
[   ] other _____

 /s/   Glenn Johnson _____